The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Welcome to the Fourth Circuit, and we're ready to hear argument in our first case, Gentry v. East West Partners et al., Mr. Schultz. We'll be glad to hear from you. Good morning. May it please the Court, my name is Glenn Schultz. I'm here today on behalf of the plaintiff, Appellant Judith Gentry, and I'm here today with my co-counsel, Ms. Julie Northup. I have three points to make in my argument today. First, Ms. Gentry was entitled to clear, consistent, and legally correct jury instructions on her disability discrimination claims, but she never received that at the trial of this case. The evidence at the trial showed that the manager who fired Ms. Gentry gave two illegal reasons for her termination, her disability and her liability to the club, which the evidence at trial made clear referred to workers' compensation claim. But the jury entered a verdict only on one of the two unlawful reasons, her workers' compensation retaliation claim. Why was that? We submit that it was because of indisputable errors in the jury instructions. The district court's instructions on disability discrimination were based upon provisions of the Americans with Disabilities Act that were abrogated by the ADA Amendments Act in 2008. Why don't you tell us which ones in particular you're objecting to, because it appears that you objected to some and didn't object to others, so it would be helpful if you could tell us which ones and what you view as the impact of each alleged error. We objected to the instruction on regarded as disability. We objected to all of the definitions of disability, first of all, because the jury instructions defined impairment as meaning substantially impaired. I didn't find an objection to regarded as. What page would you say we would find that in the record? That would be at Joint Appendix 723. What happened in this case, Judge Agee, was that after the instructions were read to the jury, we recognized that the district court had given an incorrect instruction as to the causation standard. The district court said that we had to prove that disability was the sole cause of the termination. We retired to an ante room, to the courtroom, for any objections. We put our objections on the record regarding the causation standard. You said page 723? I believe so, yeah. During that colloquy, I asked the district court to give a definition of regarded as disability. He said, I will not go beyond the instructions. That's just where you said, I was just wondering whether to include that. Yes. I'm not used to an objection being given in those terms. Usually, they're more emphatic. Well, the objection met the terminology of Rule 51 of the Federal Rules of Civil Procedure in terms of the refusal to give an objection. The standard is, if the request is made known to the court and the court gives a definitive ruling on that, then you've adequately preserved the objection. In this case, we requested a more complete and, in fact, accurate description of regarded as disability under the ADA. What did you ask the judge to do? What did you ask him to tell the jury? We asked him for a, I said the regarded as definition was not in the jury instructions, and he had defined actual disability and record of disability. I said the regarded as definition was not in there. I was just wondering whether to include that. And we had submitted a jury instruction on regarded as disability prior to the trial. I thought that the trial judge used the term perceived disability in a number of places. I mean, was there any question in this case that there was a perceived disability of some sort? In our view, no. We had direct evidence from the manager who fired Ms. Gentry that the two reasons for her termination were because of her disability and her liability. Well, my point there is that even if we credit this language as being a valid objection, my reading of the record was that the trial court used the term perceived a number of times with respect to the disability, which would seem to have told the jury what you wanted the trial judge to tell them on that point. I mean, perceived and regarded as I would think would be synonymous. If they're not, you should tell us about that. Well, that's really not the thrust of the objection. The thrust of the objection was that in the jury instructions, the district court used the term perceived as disabled. The ADA Amendments Act of 2008 changed the regarded as terminology so that the correct terminology would have been perceived as impaired, regardless of whether the impairment substantially affected a major life activity. The problem was that the district court judge used terminology that had been abrogated, changed by Congress in 2008. If the instruction had been given before 2008, before the ADA Amendments Act, it may have been correct. But after the ADA Amendments Act, it was plainly incorrect. The judge could have done one of two things to correct it, which were easy. He could have used error instruction, or he just could have read from the statute what regarded as. . . Did you ever tell the trial court, this makes a material difference, you've used the wrong statute? I mean, how did you put, other than telling the court you wondered whether to include the different instruction, how did you tell the trial court, you've made a mistake, you've used the wrong statute, this makes a difference? Well, we told the trial court at this juncture in the case. Also, we had submitted to the trial court a week or two before the trial, a jury instruction that cited the provisions of the ADA that were amended in 2008. Right, but one of the things we usually look for in error, particularly error that would cause prejudice, is that the party who raises the objection has put the trial court and opposing counsel on notice, there's an error, and here's why the error is important. And that's why I was asking that question. If it's important to your case, of course this is in hindsight, it looks like you would have said, Your Honor, I object, this is the incorrect law, you've used the wrong statute. And so that's why I'm asking, is there a place we'll find in the record where you told the trial court that? This is the objection that we entered at the record, on the record. At 723. That's right, and it complies with what Rule 51D1B says, and that rule says, a party may assign as error the failure to give an instruction if the party properly requested it, and the court rejected the request in a definitive ruling on the record. So what I asked Judge Cogburn to do is give a definition of regarded as disability. Well, is there evidence in the record that the severity of Ms. Gentry's impairment was an issue in the case? In our view, it was not an issue. We put on evidence from Ms. Gentry, from her coworkers, and from her treating doctor about her impairment and her disability. We argued to the jury that her disability met the definition of an actual disability, a record of a disability, and that she was regarded as disabled. There's no question that she met, in my view at least, there's no question that she met the definition of disability in all three prongs of the ADA Amendments Act, the ADA as amended in 2008. Did the employer contest that there was some type of a disability or impairment on the part of your client? They attempted to minimize the extent of her disability through cross-examination of Ms. Gentry and her treating doctor. We don't think that was successful, but that's the attempt they made. What do you think the standard of review is here? For the jury instruction we're talking about on disability that was incorrect? It's the standard of review that's applicable on jury instructions, which is? Well, what if you didn't object? What if we find that you didn't object and it's plain error review? We still win. Okay, and how? The reason is that in the cases that have been decided by the Fourth Circuit, the plain error standard is met where a trial court incorrectly instructs a jury as to what the law was, or the trial court, if you've got a jury of laypersons, doesn't explain sufficiently legal terminology which a layperson would not understand. So we win under either one of those prongs of the plain error review for jury instructions. There is no question but that the district court made errors in the jury instructions in several ways on the ADA claim, the disability discrimination claims. And it's our view, and I want to emphasize this, when a district court gives instructions that are flatly wrong on the law and don't adequately describe the law and incorrectly describe the law, even though it was amended almost six years before the trial date, we meet the plain error standard. You've told us about one erroneous instruction with regard to the term regarded as. You've got some others. You want to tell us about some of the others? Yes. There was, in the instructions, there was a, in discussing the definition of disability, which is applicable to all three categories of disability discrimination, the district court erred in its instructions regarding the term substantially limits under the ADA as amended in 2008. The ADA, ma'am. Did you object to that? No, we did not. The ADA Amendments Act specifically noted that the term substantially limited was to be construed broadly in favor of expansive coverage to the greatest extent permitted by the terms of the statute. In its instructions, the district court gave an instruction that provided, I'm quoting here, an impairment substantially limits a major life activity if it prevents or significantly restricts a person from performing the activity as compared to an average person in the general population. The problem there is they use the word significantly restricts. And if you look at the congressional findings as to that underlay the ADA Amendments Act, it specifically says that in amending the statute, Congress wanted the courts to not focus on the extent of disability, that you didn't have to show substantial significant restriction or significant impairment. The language that the court used contradicted the ADA Amendments Act regulations addressing the term substantially limits. And those regulations state, quote, an impairment may not prevent or significantly restrict the individual from performing a major life activity in order to be considered substantially limited. Tell us about the plain error here, because in civil cases we usually have a somewhat higher standard than we do in a criminal case when it comes to evaluating plain error. Well, as I said a moment ago, Judge Agee, the Fourth Circuit cases addressing plain error state that if a district court incorrectly defines the law for the jury, which happened here, then the plain error standard is met. Or if the district court defines terms for a jury which misleadingly describe the law or describe it in a confusing fashion, then that standard is met as well. The plain error standard is met as well. We think when the district court used terminology that was expressly abrogated by the ADA Amendments Act in 2008, the plain error standard was met. It beats any standard review, quite frankly. Also, Gentry had pursued a claim that she was discriminated against because of the errors in the jury instructions, including the errors regarding the causation standard, which I haven't discussed. We believe that the jury was put in an impossible situation of trying to decide a case without being told what the law actually is. Based on any standard review this Court's utilized for civil cases, that's ground for reversal and remand. Thank you. Okay. We'll look forward to hearing from you on rebuttal. Now we'll hear from Mr. Gilley first. Are you and Mr. Yarbrough dividing up topics, or are both of you going to hit the same thing? We are both up here for the same thing, Your Honor. Your Honor, however, I will state that to the extent that you have questions, that any of the members of the panel have questions about the plaintiff's sixth issue on the verdict being against the weight of the evidence, those should be directed to me because those only involve my client. All right. Well, opposing counsel has told us about errors as he views it in the jury instructions, and one of the last ones he discussed dealt with an instruction on what substantially limits an individual under the ADA, and it would appear the district court used the wrong statute. So why isn't that plain error? Well, Your Honor, I believe that Judge Floyd's question goes to that very issue. The role of the district judge in this case was to craft jury instructions that adequately instructed the jury on the law as applied to the facts in this case, and if you look at the evidence that the plaintiffs attempted to bring out at trial, that evidence was that they believed that through a note in an EEOC investigator's file and also by some other conversations that were had, that one of my clients, individual Jay Manor, who was the general manager of this particular club, had stated that the plaintiff's disability, using those words, was one of the reasons that she was terminated. So with that evidence being in there, I believe that Judge Cogburn made the correct decision here in issuing the instructions. In fact, to go to the page in the joint appendix that the plaintiff cited where Mr. Schultz claims to have objected to the instruction, the court went on to say, I will not go beyond that. The evidence with regard to disability is the statement, referring to the statement that the plaintiffs believed that they had evidence of that Mr. Manor had said that she was terminated because of a disability. We obviously disagree with that, but that was their evidence. If they, referring to the jury, believe the statement, they're going to get that anyway. If they can fight their way through the confusion of this thing to get to the disability claim, you've got a possibility of winning this. On the rest of the stuff, you have a hard row to hoe. I believe Judge Cogburn correctly identified the issue there. I don't know if you can speak for co-counsel, but did you contest that Ms. Gentry had an impairment of some sort? In terms of an impairment, Your Honor, there was plenty of evidence put in about an ankle condition. One of the issues of evidence was the- Well, did you contest that she had something that was wrong with her, whether it met the definition of the acts, a different story, but did you contest that she had some impairment of some sort? No, Your Honor. I think in terms of the issue of the impairment, the issues at trial went more to the knowledge of the decision makers and to the extent that there was any knowledge at all whether the alleged impairment had anything to do with the decision in the reduction in force. Further to my client's position here, I represent EastWest and Jay Manor. They were responsible for the club's operation, and they find themselves in a little bit of an unusual position here, which is defending a verdict that they disagree with. They had a verdict of $20,000 cumulatively entered against them in this case based on the jury's decision, but it's one with which they're willing to abide. Now, the trial here was about a difficult decision, which was to undergo a reduction in force at a business that was facing a very difficult economic climate, and they decided to do a reduction in force as part of that. This appeal, however, has several other issues at stake in it. One of them is what's on trial here today is the Americans with Disabilities Act and whether it means what it says in light of recent Supreme Court opinions and also the ordinary principles of statutory construction. We have briefed that extensively and believe that the but-for instruction that Judge Cogburn gave the jury in this case was the appropriate one to give. Well, is it your position the appellate is conflating the ADA liability language with the ADA language? I wouldn't say that they are conflating it, Your Honor. I believe that the ADA language has significant parallels to the Americans with Disabilities Act that based on the Supreme Court's authority in Gross and Nassar and also the Sixth Circuit, Seventh Circuit, and First Circuit interpretations that we cited to in our briefs that justify and actually require that the district court issue a but-for instruction in ADA cases. In other words, the liability provisions of the two acts are different. It's just that the remedies or the enforcement in the two acts are the same. Yes, Your Honor. The causation language would be different in terms of the words used, but the interpretation of the words used because on the basis of things like those phrases that are discussed in the Safeco case that we cited from the Supreme Court and also the Supreme Court's Burridge case from last year require that the court give a but-for instruction in ADA cases. Further, what's at stake today and what we're here to defend is the district judge's admirable work in crafting proper jury instructions in the face of a confusing overlap of federal and state claims against two corporate defendants and one individual defendant. What the district judge had in front of him in this case was two corporate defendants and one individual defendant. The plaintiff had brought sex discrimination claims under Title VII against my colleague's client, Maggie Valley. He had also brought federal ADA claims against Maggie Valley. And he had brought against Maggie Valley and EastWest jointly North Carolina state law claims for wrongful discharge on the basis of disability, North Carolina's wrongful discharge claims on the basis of sex, and wrongful discharge claims on the basis of workers' comp. Do you want to say anything about the damages before you sit down? Yes, Your Honor. I would like to hear your response to that. Yes, I appreciate that opportunity. The verdict was certainly not against the clear weight of the evidence and doesn't shock the conscience. And the main point that I think that I can draw out of there is that the plaintiff's argument on it was on the state law claims. It was, Your Honor. It was on the wrongful discharge on the basis of workers' compensation against EastWest and tortious interference against EastWest and Mr. Manor. Cumulatively, it added up to $20,000. With that, the plaintiff's discussion on this is all based on a hypothetical. The jury verdict form to which they did not object included a single line on which the jury would list their damages. They listed $10,000 on the workers' comp claim. They listed $5,000 against each of the two defendants on the tortious interference claim. That setup of the verdict form was not objected to. And the plaintiff seems to assume that the jury had mitigated those damages. There's no way to know. They may have found that she was only damaged in the sense of $20,000. That was entirely within the jury's purview. And that's another thing that we're here today to protect. And what's at stake here is the jury's role as the ultimate finder of fact and whether we're going to invade their province on no more than a hunch about what they did. There is no way for the plaintiff or any of us to know how the jury came to that amount. But nevertheless, they did. And according to the cases that we have cited, it was not against the clear weight of the evidence and would not shock the conscience. Your Honors, I see that my time has expired, so thank you for your time. Thank you, Mr. Gilley, Mr. Yarbrough. Good morning. May it please the Court. I'm Jonathan Yarbrough. I represent the other defendant in this matter, Maggie Valley Resort and Management Company. If I may, I would like to just start with a couple of comments about the ADA instructions that were given by Judge Cogburn. We believe that the standard, of course, should be plain error. Your Honor, Judge Agee, you asked a question about do we contest impairment, and I would argue to you that the only person who perceived herself as impaired during the course of that week-long trial was Ms. Gentry herself. There was no evidence whatsoever that the employer or anyone else perceived her as being impaired, and so therefore we would argue that it was perfectly appropriate for Judge Cogburn to eliminate that instruction, although, as Your Honor noted, he did state perceived multiple times during the course of his instructions. But if you look at the record facts in this case, Ms. Gentry testified that she had some pain and swelling in her ankle and that she was a slow walker and didn't like to stand all day. There was no testimony whatsoever linking that to anyone at Maggie Valley or EastWest in a decision-making role. The awareness that she had surgery back in 2009 is not enough to regard her as being, perceive her rather as having a disability or regard her as having a disability. And, in fact, if you look at the medical records from Dr. Mangone, the records which were supposedly provided to Maggie Valley said that she had no restrictions whatsoever. And, in fact, all the testimony was that she did a good job with her job. There's nothing in there to indicate that she was limited. There's no discussion whatsoever about that. And so we would argue that absent any connection between her impairment and EastWest, Maggie Valley, or Manor having viewed her as having an impairment, it's not error in the least to exclude that instruction, even assuming, for sake of argument, that counsel objected to it. Well, I think they're concerned about not having given the entirety of the regarded as instruction. And I don't believe that there was an objection preserving that in the first place because counsel stated, I was just wondering whether to include that, referring to the entirety of the regarded as. That could be interpreted as, well, should we? Should we not? I don't know. But I would argue that it's not an abuse of discretion. Counsel also has concerns about the way the judge used the term substantially limits in his ADA instructions. And if I heard counsel correctly, they did not object to that. They're just arguing that it's plain error. I would point out that in the joint appendix on page 54, it's the fifth paragraph of plaintiff's third jury instruction, which they submitted to the court. Plaintiff said in the proposed jury instructions that they asked for, quote, an impairment substantially limits a major life activity if it prevents or restricts a person from walking, standing, lifting, and bending, compared to the average person in the general population. That's the instruction that plaintiff asked for. The instruction that Judge Cogburn gave said an impairment substantially limits a major life activity if it prevents or significantly restricts a person from performing the activity compared to an average person in the population. Sorry, tell me again what page you're on. I would refer you first to joint appendix page 54. So your argument is that the district court judge gave basically the instruction that the plaintiff asked for and the plaintiff's instruction cited the wrong statute? That's what they asked for, Your Honor. If you look at the first sentence of the 1, 2, 3, 4, 5th paragraph, and this is the plaintiff's jury instructions, it says an impairment, quote, substantially limits a major life activity if it prevents or restricts a person from walking, standing, lifting, and bending, compared to the average person in the general population. That is effectively the instruction that Judge Cogburn gave. If you look at page, I believe it's 698 of the joint appendix, excuse me, 697, and also 938, Judge Cogburn talks about an impairment substantially limits a major life activity if it prevents or significantly restricts a person from performing the activity compared to an average person in the general population. Of course, the plaintiff didn't object to that. That was the instruction that he had asked for. So we're here today because the judge gave the instruction that he asked for, and now he's saying, without any objection whatsoever, oh, it must be plain error. My instruction, I guess, was wrong to begin with. Therefore, Judge Cogburn read it wrong, but there's simply no objection. We would argue that we prevail regardless of whether the court looks at this in terms of plain error or not. We'd also argue that just wondering is not an objection. It doesn't cue anyone to anything, and so therefore the instructions were appropriate as given. The plaintiff also cited a couple of cases in his brief arguing, well, the instructions were wrong. This, I believe, is in the fourth section of his brief. He cited several cases where the Fourth Circuit has given new trials for improper instructions on legal standards, and I think a closer look at those cases revealed that they're not applicable. For example, the plaintiff cited, Ms. Gentry cited, Roland v. American General Finance, wherein this court ordered a new trial for improper instructions on various legal standards. And in that case, they failed to give a mixed motive instruction rather than a Title VII case. And what the court said, what the Fourth Circuit said is, oh, well, in the interim, Costa v. Desert Palace came out, and when the instructions were formed, the trial court didn't have the benefit of that, so therefore we're going to send it back. The same is true in the Wilhelm v. Bluebell case, which plaintiff cites. It's an ADEA case. The issue was the willfulness standard for damages. In the court there, the Fourth Circuit looked at the instructions and said, oh, well, the Supreme Court, during the pendency of this appeal, addressed that issue, and so we're going to send that back. Those cases are wholly dissimilar from what we have here. There's no intervening Supreme Court decision telling us one theory or another. This is a situation where the plaintiff got the instructions that were asked for and, as a result, is now objecting. Judge, do you want to regard it as disability instruction as well? I'm not sure I understand your question, Judge. That the plaintiff got the instruction she asked for. I would argue that the plaintiff didn't even ask for that instruction. The only objection was, well, I'm wondering whether or not to put that in. And I would further argue that on the regarded as instruction. Did they not offer an instruction on regarded as? I believe they did. They did. That should be at Joint Appendix 55, but I would argue that there is absolutely no evidence sufficient to give that instruction. The issue, of course, is whether the judge abused his discretion in applying the instruction. And it seems to me, in fact, Mr. Schultz admitted that there's really no evidence that anyone regarded her as having a disability. So it would be purely an academic point to instruct a jury as to something that no evidence existed on. In fact, if you look at the evidence, it's anything but. It's one thing for her to consider herself to be impaired, but the real issue is what the decision makers thought about her. And there was absolutely no evidence whatsoever that any decision maker thought that she was impaired in any way whatsoever. In fact, as I mentioned earlier, the testimony was, she did a great job. You know, this is not a case about disability. This is a case about finances. This is a case about a company losing money left and right and eliminating a lot of people without regard to her claimed disability. We don't believe the jury erred. We don't believe that Judge Cochran erred. But further to your point, Your Honor, looking at all the facts here, there is not one shred of evidence that any of the decision makers thought that she was limited in any way whatsoever. So they asked for the instruction, at least in submitting the instructions. They didn't object to it at the trial. Judge Cochran did use the word perceived numerous times at the trial. The jury just didn't find that she was terminated on the basis of her disability at all. Well, as a matter of fact, was there an objection to the verdict form? There was no objection to the verdict form. Well, I mean, he uses the language whether it was plaintiff's disability, a record of disability, or a perception by Maggie Valley and so forth that she had a disability. So, I mean, they clearly were asked to make that determination, and they found in your favor. They found in your favor? Yes, sir. They found in our favor. In fact, Judge Cogburn, even though he said, I'm not going to give the instruction that they asked for, he did multiple times state perceived, perceived, perceived. It was on the jury verdict form, and you're right, Judge Floyd, there was absolutely no objection made to the form of the jury verdict form. So I see that my time is out. I appreciate your attention to this. Thank you. Thank you. Mr. Schultz, you have some rebuttal time. So, Mr. Schultz, is the instruction at page 54 of the appendix your requested instruction? No. It's the instruction we requested on actual disability. In the error there. Didn't the judge basically give the instruction you asked for? No. What he said was, and I'm paraphrasing, substantially limits major life activity if it prevents or significantly restricts a person. It's an awful lot like what you've asked for in this instruction. It seems like a fine point, but it's really not, because under the ADA Amendments Act of 2008, Congress made it absolutely clear that in evaluating these cases, a court was not to look at a disability or an impairment as to whether it significantly restricted a person from engaging in major life activities. Well, the next paragraph after what the opposing counsel cited there, you used the language. If you find that Ms. Ginter's impairment substantially limits at least one major life activity, you must find it's a disability. That does not limit. That's the language from the statute itself. Congress did not. Are you saying that was the wrong language? We used the language from the statute as to how actual disability is described. Congress did not change that language, but they made it clear in the ADA Amendments Act that a disability or an impairment was not to be evaluated in terms of whether it imposed a substantial or significant restriction upon a person. Let me refer just briefly to some of the misstatements and the factual misstatements that I believe my counterpart from Maggie Valley made. There's ample evidence in the record that Ms. Ginter had an impairment. As a matter of fact, we've got direct evidence that the manager who terminated her terminated her because of a disability. That's what he said. We've also got medical evidence from her treating physician that said she had an impairment. He gave her a 30% rating for disability under the North Carolina Workers' Compensation System. He goes through in quite some detail. And was the note from her manager about her having a disability, was that in evidence? Yes. It's a record of a telephone conversation that an EEOC investigator had with one of the co-owners of the club who was reciting the conversation he had with the manager who terminated her. There's also evidence in the record from, and we had an argument about whether that came in under the hearsay rule. The district court correctly decided that it did. Going back to the verdict form, the judge put the question to the jury, was Plaintiff's disability a record of disability or a perception? Obviously, they answered that question, no. That means they didn't believe your client or the evidence. Well, no, I don't think that's the case.  I believe the jury was unwilling to enter a verdict against Maggie Vallee for reasons other than whether or not she had a disability. What were the other reasons? Well, there's an argument we make about insurance and the fact that there was a good deal of poor-mouthing that went on in the case about the circumstances of Maggie Vallee for years after her termination. The judge disallowed us from introducing any evidence of insurance in a motion in limine. As a result, we were left basically without any ability to respond to this poor-mouthing about the losses that the club continued to generate, and it left the impression in the jury's mind that to impose anything more than a minimal verdict upon Maggie Vallee or any verdict at all would be unacceptably financially onerous. So what exception to Rule 411 would there be to allow evidence of insurance in because there's no punitive damages in this case? Well, the courts have talked about that that is a way to get insurance into the record when one party engages in that sort of poor-mouthing. Also, it's not prohibited by Rule 411 specifically. The only type of evidence that is prohibited is evidence of negligence or wrongdoing. I know my time is out, but I just wanted to note for the record, we did object to any use of the but-for terminology at page 722, 723 of the record. And on that objection, I asked Judge Cochran, do we need to go through here and object to every place where but-for is used? And the court said, put it on the record. I'm at 722, line 21. Put it on the record. They think there is no but-for at all in here. Thank you. I'll be glad to answer any other questions. We'll come down and greet counsel, and then we'll move on to our second case.
judges: G. Steven Agee, Henry F. Floyd, Stephanie D. Thacker